AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | | |
|---|---|---|
| United States of America<br>v.<br><br>MICHAEL JAI RUPCHAND<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br>6:26-mj- 1446 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ April 9, 2026 _____ in the county of _____ Orange _____ in the

___ Middle ___ District of _____ Florida _____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 875(c) | Interstate Threatening Communications. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Stephen Taylor, SA, FBI
_____
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: ___ 5/1/26 ___

_____
*Judge's signature*

City and state: _____ Orlando, Florida _____

Leslie Hoffman Price, U.S. Magistrate Judge
_____
*Printed name and title*

STATE OF FLORIDA                         Case No: 6:26-mj-1446

ORANGE COUNTY

**AFFIDAVIT IN SUPPORT OF ISSUANCE OF A CRIMINAL COMPLAINT**

I, Stephen Taylor, being first duly sworn, hereby state the following:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been since March 2024. In July 2024, I was assigned to Criminal Enterprises out of the Tampa Field Office, Orlando Resident Agency, and I am currently assigned to Domestic Terrorism. Among my responsibilities as an FBI SA, I have investigated a variety of criminal organizations involving narcotics trafficking, money laundering, and weapons trafficking. I am also familiar with cases involving threats against government officials, interstate threatening communications towards United States citizens, and assaults against a Federal Officer.

2.      I have been trained in obtaining probable cause, surveillance techniques, the interviewing of subjects and witnesses, and the planning and execution of arrest, search, and seizure warrants. I have also received training on criminal violations at various conferences and venues.

3.      I submit this affidavit in support of a criminal complaint charging MICHAEL JAI RUPCHAND ("RUPCHAND"), a U.S. citizen, with Interstate Threatening Communications, in violation of 18 U.S.C. § 875(c).

4.     This affidavit is not intended to be a complete and detailed description of all the facts and evidence discovered during this investigation. I have set forth only the information I believe necessary to establish probable cause that a violation of federal law has been committed.

## PROBABLE CAUSE

5.     On April 9, 2026, the FBI received a tip regarding threatening communications made by RUPCHAND relating to a Veterans Hospital in central Florida. RUPCHAND, a former Military Police (MP) officer in the Army, who recently served in Lebanon, was receiving mental health treatment from a therapist at the Veterans Administration (VA) clinic in the Lake Baldwin area of Orlando, Florida. RUPCHAND had been at the VA that day for a mental health appointment at approximately 9:00 am in the morning.  However, RUPCHAND became frustrated for an unknown reason and departed the VA before his appointment began.

6.     The threat from RUPCHAND against the VA was reported to the hospital by a national veteran's crisis/suicide hotline. RUPCHAND had made threats to the hotline because he was upset about his prior treatment at the Lake Baldwin facility. The suicide hotline reported that RUPCHAND made threats to go back into the VA hospital to kill himself and others.

7.     The VA hospital received this threat and reached out to the Orlando Police Department (OPD). At the same time, VA Police began to ping RUPCHAND's telephone and located RUPCHAND at the VA hospital in Lake Baldwin.  OPD

dispatched officers to the Lake Baldwin VA clinic but were unable to locate RUPCHAND.

8.    During this time, VA police continued to ping RUPCHAND's telephone, and the address that RUPCHAND was eventually located at was xxxx Sand Lake Road, Orlando, FL, which is a local gym. OPD responded to the address and took RUPCHAND into protective custody.

9.    While in protective custody, RUPCHAND said he had told the mental health clinic at the VA hospital, that morning, that they could cancel all of his future appointments. RUPCHAND stated that he was upset about issues regarding his VA benefits and child support payments, which were causing him significant financial stress. RUPCHAND was seeing a therapist at the VA hospital because he had previously attempted suicide on three separate occasions, twice by use of a firearm, and once by hanging. RUPCHAND stated that he did not recall making the suicidal or homicidal statements that the hotline had reported, but he did not deny making the statements either. RUPCHAND conveyed that the reason for being "fired up" during the call was he wanted to receive the treatment that he believed that he needed.

10.    On April 10, 2026, investigators received RUPCHAND's recorded telephone conversation with the crisis hotline on April 9, 2026. A partial synopsis is below, in which the reported times represented the number of minutes and seconds into the recording that RUPCHARD made certain statements:

- At 0:08 RUPCHARD stated, "Hi, I just cancelled all my VA appointments because you guys don't want to help me, so I think I'm just

3

going to kill myself." The hotline operator with which he was speaking then stated, "I'm sorry you think the VA doesn't want to help."

- At 0:22 RUPCHAND stated, "No, no, they don't, they don't." The operator then responded, "So you are going to kill yourself today?"

- At 00:32 RUPCHAND stated, "I am going to walk inside the VA clinic and shoot myself. I think that's a great idea, I think that will finally get my point across." The operator then responded with, "That's drastic, it sounds like you are extremely upset."

- At 00:43 RUPCHAND responded stating, "Yeah it is, it really is, it is fucking drastic. It really is a shame that I have to do drastic things to try and get help." The operator responded, "Yeah, well have you called the crisis line before?"

- At 00:53 RUPCHAND responded stating "Yeah, I have, I have been in therapy for many years, and I just cancelled all my appointments, because fuck this I am done." The operator stated, "Well let's see what we can do today to try and help."

11.    At this point in the telephone conversation, RUPCHAND made multiple additional concerning statements which are noted below:

- At 1:04 RUPCHAND stated, "Or maybe I should just start killing people, maybe I should just start murdering people. I think that's a great idea. Two years now I am trying to sit here and trying to fucking fight

4

with you people, get fucking help. Two years now, two fucking years, and you all can't pay me what I fucking deserve. I've got to fight you fuckers for everything when you made me this way."

- At 1:49 RUPCHAND stated, "Tell me why I shouldn't shoot myself."

- At 2:00 RUPCHAND stated, "I am going to walk in here and off myself."

12. The undersigned has listened to a recording of the above conversation between RUPCHAND and the operator, and throughout the conversation RUPCHAND uses a threatening tone, often shouting and using expletives.

13. When OPD officers made contact with RUPCHAND on April 9, 2026, he reported to them that he owned a Glock 17 firearm, that was loaded and was located in the driver side door of his vehicle. He also stated that he owned an automatic rifle (AR-15) that was at his residence locked in a safe. RUPCHAND's Glock 17 was located by OPD in RUPCHAND's vehicle, was secured, and was submitted into evidence. RUPCHAND said the AR-15 was located in a safe at xxxx Glencrest Loop, St. Cloud, FL 34772, and that his sister and mother would know how to access the firearm.

14. Further investigation revealed that, after making the threats via the veteran's crisis/suicide hotline, but before contact with OPD, RUPCHAND was contacted by the mental health providers in the Lake Baldwin VA clinic. RUPCHAND voluntarily went back into the VA clinic for approximately 45 minutes

5

and had a conversation with the mental health providers. After that meeting, he departed for the local gym where he was eventually located by OPD.

15.    On April 10, 2026, RUPCHAND was admitted for mental health evaluation (Baker Act) and was held at a VA hospital for several days for evaluation.

16.    On April 21, 2026, the undersigned telephonically interviewed the operator who spoke with RUPCHAND on the Veterans and Military crisis hotline.[1] The operator was concerned about how angry RUPCHAND was and concerned that he had just cancelled all his mental health appointments. The operator wanted to better understand RUPCHAND's situation, but all RUPCHAND did was become angrier, use more profanity, threaten suicide, and threaten to kill others. The operator thought RUPCHAND was serious about hurting himself and others due to how angry he sounded on the phone.

17.    The operator also was aware of the immediacy of the threat when RUPCHAND said, "I'm going to walk in here and fucking off myself" and "Yea, so when I walk in here and blow my fucking brains out, maybe you can fucking do something about it then." At this point, the operator understood that RUPCHAND was outside a VA facility and could walk-in and perform the threatened acts of violence. The call then ended abruptly after these statements were made.

---

[1] The operator, working with the national veteran's crisis/suicide helpline, was physically located in the state of New York; thus, RUPCHAND communicated the threats, from Florida, across state lines.

18.    The operator tried to re-contact RUPCHAND after she realized he had hung up on her but was unable to re-establish contact. The operator immediately called the crisis intervention team due to the seriousness of the threat; she was afraid that RUPCHAND was going to carry out the acts of violence he had threatened on the telephone. The operator stated that she has worked for fifteen years with the VA crisis hotline and reported that she has only been involved with approximately 20-25 situations of this magnitude.

19.    Based on the foregoing facts and evidence, I believe that probable cause exists that RUPCHAND made threatening communications in violation of 18 U.S.C. § 875(c).

Respectfully submitted,

Special Agent Stephen Taylor
Federal Bureau of Investigation

Affidavit submitted by email and attested
to me as true and accurate by telephone or
videoconference consistent with
Fed.R.Crim. P. 4.1 and 41(d)(3)
this __1st__ day of April, 2026.
May

HON. LESLIE HOFFMAN PRICE
United States Magistrate Judge

7